J-A10020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN MALLOY | : | |
| | : | |
| Appellant | : | No. 1244 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 9, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002402-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN MALLOY | : | |
| | : | |
| Appellant | : | No. 1287 EDA 2020 |

Appeal from the Order Entered June 10, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002402-2019

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 26, 2021**

Appellant, Shawn Malloy, appeals from the judgment of sentence entered on March 9, 2020, as made final by the denial of Appellant's post-sentence motion on June 10, 2020.  We affirm.

The trial court ably summarized the underlying facts of this case:

---

[*] Retired Senior Judge assigned to the Superior Court.

Prior to the incidents that brought Appellant to court, he had a lengthy career as a police officer with the Conshohocken Borough Police Department. In the evening hours of November 21, 2017, a domestic incident occurred between Appellant and his wife in the parking lot of the Allstar Bar in New Hanover Township, Montgomery County. This bar is located across the street from their house. Appellant arrived as a customer at the bar at approximately 4:30 [p.m.] that day. Later that evening, [Appellant's wife] (hereinafter "victim") walked over to the bar, and the two verbally argued in the parking lot near where Appellant's truck was parked. Shortly thereafter, Appellant drove away and the victim walked home. Appellant returned to the bar shortly thereafter. Suspecting Appellant would return to the bar, the victim also returned and saw Appellant's truck parked in the parking lot. She gained entry into Appellant's truck by using the code on the door to the vehicle. Appellant was outside the bar on the deck and noticed lights on in his car. He found the victim in his car and a brief scuffle ensued. The victim sustained minor injuries. She then went home.

The victim did not go to the police immediately that night. She claimed she was afraid to report this incident because her husband, Appellant, was a police officer. Appellant had often conveyed to her that "things could happen if [she] were to report to the police." Despite her fears, the victim went to the New Hanover Township Police Department the next day and encountered Detective Michael Coyle. She was still afraid to say anything or make any statement at that time due to the fact that Appellant was a police officer. She testified, "I didn't know what would happen if I said anything, from them not believing me to, I don't know, losing jobs, everything. I was very scared." She took Detective Coyle's card and went home.

During this time, Appellant obtained a temporary custody order for the children based on his claim that the victim was going to harm herself or the couple's children. He informed her of this. Still very emotional and upset, [the victim] called Detective Coyle from her car, which she parked in a cul-de-sac near her home. Detective Coyle came to her location. She told him she was ready to give a statement, and they went back to the police station where the victim gave a written statement. Appellant arrived at the station at around

the same time in order to turn over a copy of the emergency custody order.

As a result of the subsequent investigation, on November 24, 2017[,] police filed charges of simple assault and harassment against Appellant. (Montgomery County docket number CR 1010-2018).[fn.1] On January 11, 2018, the charges were held for court after a preliminary hearing. In the months that followed Appellant's arrest, Appellant engaged in an extensive and pervasive campaign, utilizing letters, text messages and phone calls, in an effort to harass, intimidate, or otherwise coerce the victim to drop the assault charges and/or refrain from testifying. As a result of this behavior, police filed additional charges against Appellant, including intimidation of a witness/victim, criminal use of a communication facility, obstructing administration of law, and harassment, over a span of many dates in late 2017 and 2018. . . .

[fn.1] The Commonwealth's motion to consolidate cases CR 1010-2018 and CR 2402-2018 was granted by order dated October 31, 2019. At trial, Appellant was found not guilty of the simple assault charge. The [trial] court found Appellant guilty of the summary harassment charge at the sentencing hearing on March 9, 2020.

For conduct that occurred on December 6, 2017, Appellant was found guilty of intimidation of a witness/victim - withhold information and criminal use of a communication facility. On that date, the victim received a text message on her phone from a phone number 484-206-7631, which number was unknown to her. The text message said, "check your mailbox for a very important correspondence." In the mailbox was a letter that said:

[]I can't believe they made sure that was in the paper, you and the kids must be so embarrassed. Shows they don't care about anyone but destroying certain people. Evidently Shawns [sic] defense has a couple videos of you attacking him. One with wine and one where you hit him a bunch of times in the back of the head while grabbing his mouth and neither show him fighting back. Check your house for cameras, the angle is downward towards a brown leather couch . . . he may still be able to watch

- 3 -

them or record remotely. If they turned those videos over to independent law enforcement, they may have no choice but to arrest you to cover their ass, the videos are pretty damning. If called DO NOT TALK TO ANYONE, USE YOUR RIGHT TO REMAIN SILENT AND DO NOT GIVE ANY STATEMENTS OR SUBMIT TO AN INTERVIEW regarding the videos. DO NOT COMMENT OR DENY, JUST REMAIN SILENT. And make sure those cameras get taken down.[]

[The victim] believed this was from Appellant. She testified that upon receipt of this letter she felt very scared because she knew Appellant had gone to wiretap school as part of his police training and had knowledge about how to wire a house with cameras. She was scared that Appellant had been in and around her home, and that he was attempting to instill fear in her related to the recent charges for which he was arrested.

Detective Michael Coyle of the New Hanover Township Police Department investigated this text message and letter. His investigation revealed that phone number 484-206-7631 was traced to a company by the name of Mathrawk, LLC. Mathrawk[] is a mobile application development company that sells applications for Android and Apple phones which allows a person to send a text message from a different phone number than their own. Detective Coyle obtained a search warrant for Mathrawk. He learned that the subscriber information associated with the Mathrawk phone number 484-206-7631 was . . . Appellant's personal cell phone [number]. Investigation revealed that the Mathrawk account was created on December 2, 2017, approximately ten [] days after the date of the incident at the Allstar Bar and eight [] days after Appellant was arrested on the charges related to that incident. The records indicated that on December 6, 2017 at 10:34 [p.m.], a text message was sent to the victim's cell phone stating, "check your mailbox for a very important correspondence." This message was sent with Appellant's cell phone using the Mathrawk application to appear as if it was coming from a different phone number, a number that was unknown to the victim. Appellant admitted at trial that he created the fake phone number to send this text message to the victim.

- 4 -

For conduct that occurred on January 10, 2018, Appellant was found guilty of obstructing administration of law or other government function, and criminal use of a communication facility. On that date, [the victim] received an e-mail at approximately 11:04 [p.m.] from an account with the name Ronald White and the e-mail address "rjresquire@outlook.com." (hereinafter "Ronald White e-mail"). This name and e-mail address were unknown to the victim. The victim received this email on January 10, 2018, the day prior to the preliminary hearing for the assault case related to the incident at the Allstar Bar. The e-mail address contained the word "esquire," appearing as if the correspondence [were] sent from an attorney. While this e-mail purports to be from an attorney, the e-mail does not contain a name, phone number, or address at the bottom of the e-mail as professional e-mails typically do. It stated:

> [ ] [Victim], with the pending preliminary hearing, I am sure you are scared, as I am certain Shawn is as well. It's a shame the police have pushed this far in order to get him, leaving you without any say. They do not care who is embarrassed. It is a shame this process may take a year, involve testifying at the preliminary hearing, a habeas corpus hearing, suppression hearings, and the ultimate jury trial. Win or lose, both you and Shawn's name [sic] will be dragged through the mud, all details[,] your sex life over the years, all personal stuff will now be public record, and your children may be called to testify solely because the Police really wants him bad. There actually is a simple way to end it all. It would stop the criminal process, end all criminal proceedings, and most importantly protect you from any Police harassment or intimidation. This is in no way an attempt to coerce you or push you in any direction, but I don't think anyone has given you any options or told you the truth about all the process will intail [sic]. Let[']s face it, they don't care about Shawn, they don't care about you or your kids, and it's not like Shawn is going to be honest with you about what his defense is going to be, and he probably gave his lawyer full power. There is an option, a simple solution if you have the strength or actual independence to do it. At the preliminary hearing you will be prepped on questions and answers, simply refusing to testify will not help, they can and will proceed without you. If you choose to do so,

all criminal stuff could end. Let them prep you, don't say anything, then, when you take the stand, at the very first question, you can make this statement as your answer: 'I have been pushed into this and bullied by the Police without any say. After consulting with a private attorney about the truth of everything that happened, I am utilizing my 5th Amendment right and refusing to answer any questions. I will not cooperate any further in any proceedings, or with the authorities.' Then remain silent regardless of what is asked. This simple statement when made exactly as written, completely ends the criminal case and protects you from any repercussions. It acknowledges you are doing so knowingly. Not attempting to influence you, or even asking you to do this, its [sic] just an option if you really want the criminal [sic] to end immediately.[]

Further investigation revealed that this e-mail originated at a known residence of Appellant. Detective Coyle obtained a search warrant for Microsoft for the e-mail account on the correspondence. The rjresquire@outlook.com account was created on January 10, 2018 at 10:55 [p.m.]. Nine (9) minutes later, at 11:04 [p.m.], the message was sent to the victim. The IP address associated with the e-mail was traced to Verizon Business. As a result, Detective Coyle issued a search warrant for Verizon Business. The search revealed that the e-mail account and the message that was sent [to] the victim were created at the address where Appellant resided at the time. Appellant's known e-mail address at the time was srmalloy@msn.com. The Detective learned through his investigation that the Ronald White e-mail and multiple "srmalloy" e-mails were sent from identical IP addresses.

Appellant was also found guilty of six harassment charges for conduct that occurred on May 1, 2018 and May 2, 2018. This conduct consisted of approximately [200] repeated phone calls from Appellant's personal cell phone . . . to numbers owned by the victim, from both blocked and unblocked numbers, beginning on May 1st and continuing through the night and into the next day. Some of the calls employed the *67 feature to block the caller ID and appear as if the call was coming from an unknown or blocked number. Appellant admitted to making these phone calls to the victim on these dates.

Trial Court Opinion, 8/21/20, at 3-10 (citations omitted).

The jury found Appellant guilty of: one count of intimidation of witnesses or victims, two counts of criminal use of communication facility, one count of obstructing administration of law or other governmental function, and six counts of harassment.[1] Further, the trial court found Appellant guilty of one count of summary harassment.[2] On March 9, 2020, the trial court sentenced Appellant to serve an aggregate term of two to six years in prison for his convictions. The trial court denied Appellant's post-sentence motion on June 10, 2020 and Appellant filed a timely notice of appeal. Appellant numbers four claims on appeal:

> 1. Whether the trial court committed error and abused its discretion when fashioning a top of the guidelines [two to six] year cumulative sentence for [Appellant] by considering actions for which he was acquitted as well as irrelevant facts?
>
> 2. Whether the trial court committed error and violated [Appellant's] right to due process by preventing the cross examination of complaining witness, [the victim], at sentencing?
>
> 3. Whether the trial court committed error and abused its discretion by failing to appropriately address or issue any sanctions for the Commonwealth's impermissible retention of attorney-client work product?
>
> 4. Whether the trial court committed error and abused its discretion by failing to account for the [victim's] established

---

[1] 18 Pa.C.S.A. §§ 4952(a)(3), 7512(a), 5101, and 2709(a)(5), (6), and (7), respectively.

[2] 18 Pa.C.S.A. § 2709(a)(1).

complicity and thus failing to find sufficient evidence for the convictions?

Appellant's Brief at 5-6 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable Risa Vetri Ferman. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Ferman's August 21, 2020 opinion. Therefore, we affirm on the basis of Judge Ferman's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Ferman's August 21, 2020 opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2021

**IN THE COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA  :           CR-2402-2019

VS                           :
                             :            1244 EDA 2020
SHAWN ROGERS MALLOY           :            1287 EDA 2020[1]

**OPINION**

FERMAN, J.                                 August 21, 2020

## Factual and Procedural History

Appellant, Shawn Malloy, appeals from this court's order dated June 10, 2020 denying his post-sentence motion. On November 7, 2019, a jury found appellant guilty of ten crimes that occurred on various dates related to Appellant's attempt to scuttle the prosecution of a domestic violence assault, in which it was alleged the Appellant assaulted his wife, the victim in this case. They are: one count of intimidation of a witness/victim - withhold information[2] (December 6, 2017); two counts of criminal use of a communication facility[3] (December 6, 2017, January 10, 2018); one count of obstructing administration of law or other government function[4] (January 10, 2018), two counts of harassment—communicated repeatedly in an anonymous manner[5] (May 1, 2018; May 2, 2018); two counts of harassment-communicated repeatedly at extremely inconvenient hours[6] (May 1, 2018, May 2, 2018); two

---

[1] These cases were consolidated, *sua sponte*, by order of the Superior Court dated July 29, 2020.
[2] 18 Pa.C.S.A. § 4952(a)(3) (F3).
[3] 18 Pa.C.S.A. § 7512(a) (F3).
[4] 18 Pa.C.S.A. § 5101 (M2).
[5] 18 Pa.C.S.A. § 2709(a)(5) (M3).
[6] 18 Pa.C.S.A. § 2709(a)(6) (M3).

counts of harassment–communicated repeatedly[7] (May 1, 2018, May 2, 2018). On March 9, 2020, following a sentencing hearing, Appellant was sentenced as follows: at count 5, intimidation of a witness/victim (December 6, 2017), a term of imprisonment for not less than fourteen (14) months nor more than 36 (thirty-six) months[8]; at counts 10 and 11, criminal use of a communication facility (December 6, 2017 and January 10, 2018), a term of imprisonment for nine (9) to twenty-four (24) months to run consecutive to the sentence imposed at count 5;[9] at count 15, obstructing administration of law or other government function, a term of imprisonment for not less than one (1) month nor more than twelve (12) months to run consecutive to the sentence imposed at counts 10 and 11, for a total of twenty-four (24) months to six (6) years. In addition, Appellant was sentenced to one (1) year of probation for the six harassment charges. Appellant is RRRI eligible. At the sentencing hearing, the victim provided a victim impact statement. In addition, Appellant called a number of character witnesses to testify to his good reputation in the community.

On March 19, 2020, Appellant filed a timely motion for reconsideration of sentence. On June 10, 2020, the court denied Appellant's motion for reconsideration of sentence. On June 26, Appellant filed a timely notice of appeal, appealing the court's order dated June 10, 2020 denying his post-sentence motion.[10] On, June 30, 2020, the court ordered Appellant to file a

---

[7] 18 Pa.C.S.A. § 2709(a)(7) (M3).

[8] At count 5, Appellant was also sentenced to pay the costs of prosecution.

[9] Counts 10 and 11 to run concurrently to each other.

[10] Pennsylvania Rule of Criminal Procedure 720(B)(1)(a)(c) provides that the post-sentence motion is optional. Because the post-sentence motion is optional, the failure to raise an issue with sufficient particularity in the post-

concise statement of issues raised on appeal, which Appellant timely filed on July 21, 2020. The undersigned now files her 1925(a) opinion.

A factual background follows. Prior to the incidents that brought Appellant to court, he had a lengthy career as a police officer with the Conshohocken Borough Police Department. In the evening hours of November 21, 2017, a domestic incident occurred between Appellant and his wife in the parking lot of the Allstar Bar in New Hanover Township, Montgomery County. This bar is located across the street from their house. Appellant arrived as a customer at the bar at approximately 4:30 that day. (N.T. 11/5/19 at 105). Later that evening, Ms. Malloy (hereinafter "victim") walked over to the bar, and the two verbally argued in the parking lot near where Appellant's truck was parked. (N.T. 11/4/19 at 39-42; 11/5/19 at 107). Shortly thereafter, Appellant drove away and the victim walked home. (N.T. 11/4/19 at 43). Appellant returned to the bar shortly thereafter. (N.T. 11/6/19 at 100-101). Suspecting Appellant would return to the bar, the victim also returned and saw Appellant's truck parked in the parking lot. She gained entry into Appellant's truck by using the code on the door to the vehicle. (N.T. 11/4/19 at 44-45). Appellant was outside the bar on the deck and noticed lights on in his car. He

---

sentence motion will not constitute a waiver of the issue on appeal as long as the issue was preserved before or during trial. *Pa.R.Crim.P. 720(B)(1)(a)(c).* This language precluding waiver of issues not raised in post-sentence motions implicitly requires an appeal to be taken from the judgment of sentence, not the order denying post-sentence motions. An appeal from an order denying post-sentence motions would necessarily challenge only those issues raised in the motion. However, Rule 720 permits a defendant to raise additional issues on appeal. An appeal taken from the judgment of sentence permits the Superior Court to review *all* properly preserved issues raised by the defendant. *See Com. v. Chamberlain*, 658 A.2d 395, 397 (Pa. Super. 1995). It is important to note that Appellant's notice of appeal states that he is appealing the order denying the post-sentence motion, and not the judgement of sentence, which became final when the court denied his post-sentence motion. Appellant brings many claims on appeal, some of which were not raised in his post-sentence motion. The court will address all of Appellant's claims.

found the victim in his car and a brief scuffle ensued. (N.T. 11/4/19 at 46-48). The victim sustained minor injuries. She then went home. (N.T. 11/4/19 at 50-51).

The victim did not go to the police immediately that night. She claimed she was afraid to report this incident because her husband, Appellant, was a police officer. (N.T. 11/4/19 at 56-58). Appellant had often conveyed to her that "things could happen if [she] were to report to the police." (N.T. 11/4/19 at 56-57). Despite her fears, the victim went to the New Hanover Township Police Department the next day and encountered Detective Michael Coyle. She was still afraid to say anything or many any statement at that time due to the fact that Appellant was a police officer. (11/4/19 at 57-58; N.T. 11/5/19 at 134-135). She testified, "I didn't know what would happen if I said anything, from them not believing me to, I don't know, losing jobs, everything. I was very scared." (N.T. 11/4/19 at 58; N.T. 11/5/19 at 134-135). She took Detective Coyle's card and went home.

During this time, Appellant obtained a temporary custody order for the children based on his claim that the victim was going to harm herself or the couple's children. (N.T. 11/6/19 at 105-106). He informed her of this. (N.T. 11/6/19 at 106-107). Still very emotional and upset, Ms. Malloy called Detective Coyle from her car, which she parked in a cul-de-sac near her home. (N.T. 11/4/19 at 60). Detective Coyle came to her location. She told him she was ready to give a statement, and they went back to the police station where the victim gave a written statement. (N.T. 11/4/19 at 60-61; 11/5/19 at 137-

139). Appellant arrived at the station at around the same time in order to turn over a copy of the emergency custody order. (N.T. 11/6/19 at 107-108).

As a result of the subsequent investigation, on November 24, 2017 police filed charges of simple assault and harassment against Appellant. (Montgomery County docket number CR 1010-2018).[11] On January 11, 2018, the charges were held for court after a preliminary hearing. In the months that followed Appellant's arrest, Appellant engaged in an extensive and pervasive campaign, utilizing letters, text messages and phone calls, in an effort to harass, intimidate, or otherwise coerce the victim to drop the assault charges and/or refrain from testifying. As a result of this behavior, police filed additional charges against Appellant, including intimidation of a witness/victim, criminal use of a communication facility, obstructing administration of law, and harassment, over a span of many dates in late 2017 and 2018. These crimes are the subject of the instant case.

For conduct that occurred on December 6, 2017, Appellant was found guilty of intimidation of a witness/victim – withhold information and criminal use of a communication facility. On that date, the victim received a text message on her phone from a phone number 484-206-7631, which number was unknown to her. (N.T. 11/4/19 at 81-82). The text message said, "check your mailbox for a very important correspondence." (N.T. 11/4/19 at Exhibit C-6). In the mailbox was a letter that said:

---

[11] The Commonwealth's motion to consolidate cases CR 1010-2018 and CR 2402-2018 was granted by order dated October 31, 2019. At trial, Appellant was found not guilty of the simple assault charge. The court found Appellant guilty of the summary harassment charge at the sentencing hearing on March 9, 2020.

"I can't believe they made sure that was in the paper, you and the kids must be so embarrassed. Shows they don't care about anyone but destroying certain people. Evidently Shawns [sic] defense has a couple videos of you attacking him. One with wine and one where you hit him a bunch of times in the back of the head while grabbing his mouth and neither show him fighting back. Check your house for cameras, the angle is downward towards a brown leather couch...he may still be able to watch them or record remotely. If they turned those videos over to independent law enforcement, they may have no choice but to arrest you to cover their ass, the videos are pretty damning. If called DO NOT TALK TO ANYONE, USE YOUR RIGHT TO REMIAN SILENT AND DO NOT GIVE ANY STATEMENTS OR SUBMIT TO AN INTERVIEW regarding the videos. DO NOT COMMENT OR DENY, JUST REMAIN SILENT. And make sure those cameras get taken down."

(N.T. 11/4/19 at 84, Exhibit C-7).

Ms. Malloy believed this was from Appellant. She testified that upon receipt of this letter she felt very scared because she knew Appellant had gone to wiretap school as part of his police training and had knowledge about how to wire a house with cameras. (N.T. 11/4/19 at 84-85). She was scared that Appellant had been in and around her home, and that he was attempting to instill fear in her related to the recent charges for which he was arrested. (N.T. 11/4/19 at 82-85).

Detective Michael Coyle of the New Hanover Township Police Department investigated this text message and letter. His investigation revealed that phone number 484-206-7631 was traced to a company by the name of Mathrawk, LLC. Mathrawk, is a mobile application development company that sells applications for Android and Apple phones which allows a person to send a text message from a different phone number than their own. (N.T. 11/5/19 at 154). Detective Coyle obtained a search warrant for Mathrawk. He learned

that the subscriber information associated with the Mathrawk phone number 484-206-7631 was phone number 610-755-2155, which is Appellant's personal cell phone. (N.T. 11/5/19 at 154-155, Exhibit C-13). Investigation revealed that the Mathrawk account was created on December 2, 2017, approximately ten (10) days after the date of the incident at the Allstar Bar and eight (8) days after Appellant was arrested on the charges related to that incident. (N.T. 11/5/19 at 155). The records indicated that on December 6, 2017 at 10:34 PM, a text message was sent to the victim's cell phone stating, "check your mailbox for a very important correspondence." (N.T. 11/5/19 at 156). This message was sent with Appellant's cell phone using the Mathrawk application to appear as if it was coming from a different phone number, a number that was unknown to the victim. Appellant admitted at trial that he created the fake phone number to send this text message to the victim. (N.T. 11/6/19 at 217).

For conduct that occurred on January 10, 2018, Appellant was found guilty of obstructing administration of law or other government function, and criminal use of a communication facility. On that date, Ms. Malloy received an e-mail at approximately 11:04 PM from an account with the name Ronald White and the e-mail address "rjresquire@outlook.com." (N.T. 11/5/19 at 87, Exhibit C-9) (hereinafter "Ronald White e-mail"). This name and e-mail address were unknown to the victim. (N.T. 11/4/19 at 88). The victim received this e-mail on January 10, 2018, the day prior to the preliminary hearing for the assault case related to the incident at the Allstar Bar. The e-mail address

contained the word "esquire," appearing as if the correspondence was sent from an attorney. (N.T. 11/4/19 at 88). While this e-mail purports to be from an attorney, the e-mail does not contain a name, phone number, or address at the bottom of the e-mail as professional e-mails typically do. (N.T. 11/4/19 at 91). It stated:

"Ms. Malloy, with the pending preliminary hearing, I am sure you are scared, as I am certain Shawn is as well. It's a shame the police have pushed this far in order to get him, leaving you without any say. They do not care who is embarrassed. It is a shame this process may take a year, involve testifying at the preliminary hearing, a habeas corpus hearing, suppression hearings, and the ultimate jury trial. Win or lose, both you and Shawn's name will be dragged through the mud, all details[,] your sex life over the years, all personal stuff will now be public record, and your children may be called to testify solely because the Police really wants him bad. There actually is a simple way to end it all. It would stop the criminal process, end all criminal proceedings, and most importantly protect you from any Police harassment or intimidation. This is in no way an attempt to coerce you or push you in any direction, but I don't think anyone has given you any options or told you the truth about all the process will intail [sic]. Let[']s face it, they don't care about Shawn, they don't care about you or your kids, and it's not like Shawn is going to be honest with you about what his defense is going to be, and he probably gave his lawyer full power. There is an option, a simple solution if you have the strength or actual independence to do it. At the preliminary hearing you will be prepped on questions and answers, simply refusing to testify will not help, they can and will proceed without you. If you choose to do so, all criminal stuff could end. Let them prep you, don't say anything, then, when you take the stand, at the very first question, you can make this statement as your answer: 'I have been pushed into this and bullied by the Police without any say. After consulting with a private attorney about the truth of everything that happened, I am utilizing my 5th Amendment right and refusing to answer any questions. I will not cooperate any further in any proceedings, or with the authorities.' Then remain silent regardless of what is asked. This simple statement when made exactly as written, completely ends the criminal case and protects you from any repercussions. It acknowledges you are doing so knowingly. Not attempting to influence you, or even asking you to do this, its [sic] just an option if you really want the criminal to end immediately."
(Exhibit C-9; N.T. 11/4/19 at 88-90).

Further investigation revealed that this e-mail originated at a known residence of Appellant. Detective Coyle obtained a search warrant for Microsoft for the e-mail account on the correspondence. The rjresquire@outlook.com account was created on January 10, 2018 at 10:55 PM. Nine (9) minutes later, at 11:04 PM, the message was sent to the victim (N.T. 11/5/19 at 161). The IP address associated with the e-mail was traced to Verizon Business (N.T. 11/5/19 at 162-163). As a result, Detective Coyle issued a search warrant for Verizon Business. The search revealed that the e-mail account and the message that was sent the victim were created at the address where Appellant resided at the time. (N.T 11/5/19 at 163-164). Appellant's known e-mail address at the time was srmalloy@msn.com. (N.T. 11/5/19 at 170). The Detective learned through his investigation that the Ronald White e-mail and multiple "srmalloy" e-mails were sent from identical IP addresses. (N.T. 11/5/19 at 172).

Appellant was also found guilty of six harassment charges for conduct that occurred on May 1, 2018 and May 2, 2018. This conduct consisted of approximately two hundred (200) repeated phone calls from Appellant's personal cell phone (610-755-2155) to numbers owned by the victim, from both blocked and unblocked numbers, beginning on May 1st and continuing through the night and into the next day. (N.T. 11/4/19 at 100; N.T. 11/5/19 at 179-183). Some of the calls employed the *67 feature to block the caller ID and appear as if the call was coming from an unknown or blocked number. (N.T.

11/5/19 at 179-180). Appellant admitted to making these phone calls to the

victim on these dates. (11/6/19 at 188-190).

## Issues

Appellant raises eleven issues on appeal. They are set forth in his

concise statement as follows:

"1. THE COURT ERRED BY FAILING TO PERMIT COUNSEL FOR APPELLANT TO PROPERLY CROSS-EXAMINE COMPLAINING WITNESS AT SENTENCING CLAIMING HER TESTIMONY WOULD BE USED AS AN "IMPACT STATEMENT", RATHER THAN AS FACTUAL TESTIMONY. THE COURT THEN TOOK HER TESTIMONY AS FACTUALLY TRUE IN RENDERING THE SENTENCE IN THE MATTER WHILE PREVENTING APPELLANT FROM SHOWING THAT THE ITEMS RELIED UPON BY THE COURT WERE FACTUALLY UNTRUE. AS THE SENTENCE WAS RENDERED BASED ON FALSE INFORMATION, IT IS FACIALLY INVALID. THE COURT THEREFORE ERRED IN HALTING APPELLANT'S CROSS EXAMINATION OF THE ONLY COMMONWEALTH WITNESS AT SENTENCING. FURTHERMORE, THIS AMOUNTED TO A DENIAL OF APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES.

2. THE COURT ERRED IN CONSIDERING FACTS FOR SENTENCING THAT WERE NOT IN EVIDENCE OR SIMPLY INCORRECT. MORE SPECIFICALLY, BUT NOT LIMITED TO THE ENUMERATED, THE COURT EXPLICITLY CONSIDERED THE FOLLOWING:
A. THE COURT CITED TO THE TESTIMONY OF COMPLAINING WITNESS, CLAUDIA MALLOY, AT SENTENCING, SPECIFICALLY STATING THAT THE APPELLANT CONTINUED HARASSMENT AND CONTACT WITH HER IN THE WEEKS LEADING UP TO THE HEARING (I.E. SPYING, FOLLOWING AND COMMUNICATION THROUGH THE CHILDREN). CROSS EXAMINATION WOULD HAVE SHOWN THIS TO BE DEMONSTRABLY UNTRUE. GIVEN THAT THE COURT RELIED ON THE FACTUAL ASSERTIONS OF CLAUDIA, THE COURT ERRED BOTH IN ITS RULING HALTING THE CROSS EXAMINATION AND, SUBSEQUENTLY RELYING ON THE EVIDENCE. THERE WAS NO EVIDENCE SUPPORTING CLAUDIA'S VERSION OF EVENTS THE APPELLANT WAS NOT ABLE TO CROSS-EXAMINE CLAUDIA TO EXPLORE THE VERACITY OF HER CLAIMS AND THE COURT CONSIDERED SEVERAL OF HER FACTUAL ASSERTIONS AS TRUE WHEN APPELLANT'S COUNSEL COULD HAVE SHOWN THESE TO BE UNTRUE IF GIVEN THE OPPORTUNITY TO FULLY CROSS EXAMINE HER.

B. CLAUDIA FURHTER CLAIMED THAT APPELLANT HAD BEEN TRYING TO CONTACT HER THROUGHT THE CHILDREN, OFFERING TO DO NICE THINGS FOR THE CHILDREN OR CLAUDIA IF SHE WOULD ALLOW APPELLANT BACK IN HER LIFE. COUNSEL WAS PREPARED TO OFFER A SUBSTANTIVE CROSS EXAMINATION TO THIS POINT, WANTING CLAUDIA TO TESTIFY ABOUT THE TIMES THAT SHE HAD HEARD EACH OF THESE STATEMENT (AS CLAUDIA ONLY PROVIDED A TIME FRAME FOR ONE OF THE STATEMENTS). COUNSEL WAS IN POSSESSION OF PHONE RECORDS THAT HE DESIRED TO CROSS EXAMINE CLAUDIA ON WHICH DEMONSTRATED SHE HAD REACHED OUT TO THE APPELLANT DURING THIS TIME, VIA PHONE. FURHTERMORE, DEPENDING ON THE TIME FRAME OFFERED BY CLAUDIA, APPELLANT'S COUNSEL WAS PREPARED TO OFFER TESTIMONY FROM OTHER WITNESSES THAT DEMONSTRATED THAT CLAUDIA WAS LYING TO THE COURT.

C. AS IT PERTAINS TO CLAUDIA'S REPEATED ASSERTION THAT SHE WANTED NOTHING TO DO WITH THE APPELLANT AFTER THE FIRST INCIDENT, WHICH WAS PART OF THE BASIS OF HER STATEMENT THAT THE APPELLANT HAD REPEATEDLY HARASSED AND TORMENTED HER, COUNSEL WAS PREPARED TO CROSS CLAUDIA ON THE NUMEROUS EXAMPLES OF CONTACT INITIATED BY HER SINCE THEN. THE DISCOVERY IS REPLETE WITH DOCUMENTS AND EVIDENCE OF CLAUDIA REACHING OUT TO AND CONTACTING THE APPELLANT. APPELLANT'S COUNSEL WAS HALTED FROM CROSS EXAMINING CLAUDIA ON HER FACTUAL ASSERTIONS DUE TO THE COURT'S RULING THAT IT WOULD NOT BE CONSIDERING THE ASSERTIONS FACTUALLY, BUT RATHER AS VICTIM IMPACT. DESPITE THAT RULING, THE COURT DID, IN FACT, CONSIDER THE ABOVE STATEMENTS AS FACT, AND CITED TO THEM AS REASONS SUPPORTING A LENGTHY STATE PRISON SENTENCE FOR A FIRST-TIME OFFENDER.

D. THE COURT, IN SUPPORT OF ITS RULING, STATED THAT THE LETTERS FROM APPELLANT IN QUESTION WERE SENT DAYS BEFORE COURT HEARINGS, BOTH AT THE MAGISTERIAL DISTRICT JUSTICE LEVEL AND THE COURT OF COMMON PLEASE LEVEL, AND THIS SUPPORTED THE IMPOSITION OF A LENGTHY SENTENCE. THIS, RESPECTFULLY, WAS NOT SUPPORTED BY THE EVIDENCE ADMITTED IN THE MATTER. WHILE ONE LETTER FOR WHICH APPELLANT WAS CONVICTED TOOK PLACE CLOSE IN TIME TO THE PRELIMINARY HEARING, THE APPELLANT WAS NOT CONVICTED OF ANY LETTER CLOSE

IN PROXIMITY TO ANY COMMON PLEAS HEARING. IN FACT, NONE OF THE LETTERS THAT THE APPELLANT WAS CHARGED WITH-AND ACQUITTED OF-WERE TRANSMITTED IN PROXIMITY TO A HEARING BEFORE THE COMMON PLEAS COURT. IT WAS ERROR TO RELY ON THIS ISSUE.

E. THE COURT ALSO RELIED ON THE FACT THAT APPELLANT WAS A POLICE OFFICER FOR A NUMBER OF YEARS AND THE COMMONWEALTH DID NOT PRESENT A SINGLE PIECE OF EVIDENCE THAT DEMONSTRATED THE APPELLANT USED HIS CAPACITY AS A POLICE OFFICER IN ANY WAY, SHAPE OR FORM IN THIS CASE, OR THAT ANY OF THE FACTS OF THIS MATTER TOOK PLACE WHILE THE APPELLANT WAS WORKING IN HIS ROLE AS A POLICE OFFICER. MOREVOVER, THE APPELLANT WAS NOT A POLICE OFFICER AT THE TIME THAT THE LETTER FOR WHICH HE WAS CONVICTED WAS SENT. SHORTLY AFTER THE INCIDENT THE APPELLANT WAS TERMINATED AS A RESULT OF HIS ARREST FOR SIMPLE ASSAULT, THUS, AT THE TIME THE LETTER WAS SENT HE WAS NOT EMPLOYED AS A POLICE OFFICER. AS SUCH, IT IS RESPECTFULLY SUGGESTED THAT THE COURT WRONGLY CONSIDERED THE APPELLANT'S EMPLOYMENT AS A POLICE OFFICER TO SUPPORT THE IMPOSITION OF A SIGNIFICANT STATE SENTENCE.

F. THE COURT CITED TO THE APPELLANT HAD SENDING MULTIPLE LETTERS TO CLAUDIA AND THE COURT USED THIS FACT TO SUPPORT THE IMPOSITION OF CONSECUTIVE, TOP OF THE STANDARD RANGE SENTENCES. THE APPELLANT WAS ACQUITTED OF ALL OF THE CHARGES RELATED TO EVERY OTHER EMAIL/LETTER, SAVE ONE. THE COURT ERRED WHEN CONSIDERING EVIDENCE, AND RELYING ON THESE TO SUPPORT THE IMPOSITION OF A SIGNIFICANT STATE SENTENCE.

3. THE COURT ERRED BY SENTENCING THE APPELLANT IN THE TOP RANGE OF THE SENTENCING GUIDELINES WHEN THERE WAS NO RELIABLE EVIDENCE OF RECORD JUSTIFYING SUCH A SENTENCE AS AFORESAID.

4. THE TRIAL JUDGE ERRED IN CONVICTING THE APPELLANT FOR CHARGE OF SUMMARY HARASSMENT WHEN THERE WAS NO EVIDENCE OF HARASSMENT BY THE APPELLANT AND THE JURY ACQUITTED THE APPELLANT OF ALL CHARGES RELATED TO THE INCIDENT AT THE ALL-STAR BAR.

5.  THE COURT ERRED IN NOT IMPOSING SANCTIONS FOR THE COMPLAINING WITNESS'S THEFT OF THE ATTORNEY CLIENT NOTES BELONGING TO THE APPELLANT, AS WELL AS FOR THE COMMONWEALTH'S IMPERMISSIBLE RETENTION OF SAID PAPERWORK AND FAILURE TO PROMPTLY NOTIFY THE APPELLANT AND HIS COUNSEL OF THE COMMONWEALTH'S POSSESSION OF SAID NOTES.

6.  AFTER THE SENTENCING, APPELLANT HAS LEARNED OF THE EXISTENCE OF STATEMENTS OF THE COMPLAINING WITNESS, MADE TO CONSHOHOCKEN BOROUGH POLICE DEPARTMENT AS PART OF THE LABOR INVESTIGATION, WHICH THE COMMONWEALTH FAILED TO PRODUCE TO THE APPELLANT AND HIS COUNSEL.

7.  THE COURT FAILED TO TAKE PROPER ACCOUNT OF THE COMPLAINING WITNESS'S DEMONSTRATED COMPLICITY IN THE ACTIONS THAT WERE AT THE HEART OF THE OBSTRUCTION AND HARASSMENT CONVICTIONS.

8.  THE COMMONWEALTH FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUSTAIN THE CHARGE OF INTIMIDATION OF WITNESSES AS THE EVIDENCE - AND THE QUESTIONS ASKED BY THE JURY – CLEARLY DEMONSTRATED THE SHE WAS A WILLING PARTICIPANT IN THE CREATION OF SAID COMMUNICATIONS, AS WELL AS SOLICITING SAID COMMUNICATIONS.

9.  THE COMMONWEALTH FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUSTAIN THE CHARGE OF OBSTRUCTION OF JUSTICE AS THE EVIDENCE – AND THE QUESTIONS ASKED BY THE JURY – CLEARLY DEMONSTRATED THAT SHE WAS A WILLING PARTICIPANT IN THE CREATION OF SAID COMMUNICATIONS, AS WELL AS SOLICITING SAID COMMUNICATIONS.

10. THE COMMONWEALTH FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUSTAIN THE CHARGES OF CRIMINAL USE OF A COMMUNICATION FACILITY AS THE EVIDENCE – AND THE QUESTIONS ASKED BY THE JURY – CLEARLY DEMONSTRATED THAT SHE WAS A WILLING PARTICIPANT IN THE CREATION OF SAID COMMUNICATIONS, AS WELL AS SOLICITING SAID COMMUNICATIONS.

11. THE COMMONWEALTH FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUSTAIN THE CHARGE OF HARASSMENT AS THE EVIDENCE – AND THE QUESTIONS ASKED BY THE JURY – CLEARLY DEMONSTRATED THAT SHE WAS A WILLING PARTICIPANT IN THE COMMUNICATIONS AND SAID COMMUNICATIONS REPRESENTED THE

NORMAL BACK AND FORTH BETWEEN APPELLANT AND COMPLAINING WITNESS."

## Discussion

Appellant's first claim of trial court error is that the court erred in failing to permit defense counsel to properly cross examine the victim in this case related to her victim impact statement at the sentencing hearing. Appellant claims that the court considered the victim impact statement as a factual document and relied on those facts in fashioning Appellant's sentence. As a result, Appellant claims the sentence is based on false information and is facially invalid. Further, Appellant claims that this amounted to a denial of Appellant's constitutional right to confront the witness. These claims have no merit.

The standard employed when reviewing the discretionary aspects of sentencing is very narrow. *Commonwealth v. King*, 182 A.3d 449, 455 (Pa. Super. 2018). A sentence will be reversed only if the sentencing court abused its discretion or committed an error of law. *Id.* Merely erring in judgment is insufficient to constitute abuse of discretion. *Id.* Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Conte*, 198 A.3d 1169, 1179 (Pa. Super. 2018) (*appeal denied*, 206 A.3d 1029 (Pa. 2019).

The admissibility of evidence at sentencing, including victim impact evidence, rests with the sound discretion of the trial court. *King*, 182 A.3d at

455. The conduct of a sentencing hearing differs from the trial of the case. *Id.* To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant. *Id.* While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial. *Id.*

The purpose of a victim impact statement is to allow victims of crime to inform the court of how the crime impacted their lives. In 1998, our General Assembly promulgated a Bill of Rights for crime victims which provides them the right, "to have opportunity to offer prior comment on the sentencing of a defendant...to include the submission of a written and oral victim impact statement detailing the physical, psychological and economic effects of the crime on the victim and the victim's family." *Id.* (citing *18 P.S. §11.201(5)*). The Supreme Court of the United States stated that the purpose of victim impact evidence is to show the victim's uniqueness as a human being and to illustrate that a particular individual's loss has a distinct effect on society. *Id.* (citing *Payne v. Tennessee*, 501 U.S. 808, 824, 111 S.Ct. 2597, 117 L.Ed.2d 720 (1991)). Similarly, in Pennsylvania, this Court has emphasized that crime victims in the Commonwealth have the "right to breathe life with all its emotion into their victim impact statements." *Id.* In other words, the purpose of victim impact statements is to personalize the crime and to illustrate the human effects of it. *Id.*

During a sentencing proceeding, due process allows a court to consider any information, even if it would not be admissible under the evidentiary rules,

provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence. *Commonwealth v. Eldred*, 207 A.3d 404, 408 (Pa. Super. 2019) (citing *United States v. DeAngelis*, 243 F. App'x 471, 474 (11th Cir. 2007)). In Pennsylvania, due process does not include the ability to cross-examine adverse witnesses post-trial because the Sixth Amendment to the United States Constitution "does not apply in sentencing hearings." *Id.* (citing *Commonwealth v. Wantz*, 84 A.3d 324, 337 (Pa. Super. 2014) (quoting *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005)). A defendant has no constitutional right to cross-examine the author of a victim impact statement. *Id.*

At sentencing, the victim read a letter that she prepared as a victim impact statement. The victim attested to the physical, psychological, and economic effects these crimes had on her and her children. (N.T. Sentencing 3/9/2020 at 12-21). She attested to the fear she felt, and the pattern abuse she endured prior to and after the assault incident. (N.T. Sentencing 3/9/2020 at 19-21). She attested to the fear she continues to feel even after the trial has ended. (N.T. Sentencing 3/9/2020 at 19-21). Defense counsel cross examined her. Once defense counsel started to ask the victim questions that tested the veracity of the facts, the Commonwealth objected, and the court sustained the objection. (N.T. Sentencing 3/9/2020 at 24).

At the sentencing hearing, the court first considered the factors listed in 42 Pa.C.S.A. § 9722 to determine whether a probationary sentence was

appropriate in this case, as Appellant requested. (N.T. Sentencing 3/9/2020 at 104-105). The court determined a probationary sentence was not appropriate. Next, the court considered the victim impact statement stating, "I've considered the victim impact statement carefully, and not as Mr. Schadler [defense counsel] might suggest as a factual document, but rather as a document that talks to me about the impact of Mr. Malloy's conduct on his estranged wife." (N.T. Sentencing 3/9/2020 at 106). In considering the victim impact statement the court stated:

> "She said to me that she was strangled with fear, and he controlled her, and he often told her that he would never get caught, that he knew the system. He would brag about all the cops he knew, that judges, the lawyers, and it was in that context with that knowledge and those statements when the very first letter came in the mail on the eve of the preliminary hearing, she knew it was real, and she knew she had something to fear.[12] Ms. Malloy has indicated to me that for two years she has lived in a constant state of fear. Having the PFA was not enough to make her feel safe. This police officer knew exactly what to say to keep her living in fear, and she has lived that fear, which this Court finds to be real every day. ... Mrs. Malloy says, 'Never will it end' and is frustrated by the fact that the trial did not seem to reveal the truth or justice. It will end. It ends today. It will end with this sentencing, because that is this Court's responsibility to do what is right, to uphold the law, and to bring justice to this unjust situation. No one, no one is above the law, especially not someone who was sworn to uphold it, and I am entrusted with the responsibility to enforce it."
> (N.T. Sentencing 3/9/2020 at 106-107).

Contrary to Appellant's claim, the court specifically stated that it did not consider the victim impact statement as a factual document. The court's sentence was not based on false information, as appellant claims. In imposing

---

[12] The court recognizes that the very first letter to which Ms. Malloy refers in her victim impact statement appears to be the letter from December 6, 2017 (previously described in this opinion) that was in her mailbox and referenced surveillance cameras. The correspondence Ms. Malloy received on the eve of the preliminary hearing, January 10, 2018, was the "Ronald White e-mail."

sentence, the court is guided by the general principle that the sentence imposed and confinement imposed should be consistent with the protection of the public, with the gravity of the offense as it related to the impact of the life of the victim and on the community, and the rehabilitative needs of the defendant. In this case, the court considered a great deal of information including, all of the evidence presented during the course of the three-day trial of this case, all of the information presented in court at sentencing, the witnesses, the victim impact testimony, and the witnesses presented by the defense, along with Appellant's testimony at sentencing. In addition, the court considered the presentence investigation in detail, along with the PPI evaluation and the psychological evaluation. (N.T. Sentencing 3/9/2020 at 103). When a sentencing court is fully informed by the presentence report, "its discretion should not be disturbed." *See King*, 182 A.3d at 459.

Appellant's constitutional claim related to his right to confront witnesses has no merit. A defendant has no constitutional right to cross-examine the author of a victim impact statement. *See Eldred*, 207 A.3d at 408. In this case, Appellant was permitted to cross examine the victim at sentencing. The Commonwealth's objection was sustained when defense counsel tested the veracity of the facts laid out in her victim impact statement. During the four-day jury trial, defense conducted a comprehensive cross examination of the victim. In addition, Appellant testified at trial. At sentencing, Appellant presented six (6) character witnesses to testify on his behalf, and Appellant testified himself. The character witnesses discussed topics ranging from

Appellant's relationship with the victim, personal habits, any potential for substance abuse, Appellant's relationship with his children and his work history. A sentencing hearing is not designed to allow counsel a second opportunity to reexamine the credibility of witnesses. The court exercised proper discretion in its rulings related to the cross examination of the victim at sentencing during her victim impact statement.

Next, Appellant claims that the court erred in considering facts for sentencing that were not in evidence or simply incorrect. Appellant set forth six examples of these facts, and the court will address each one. First, Appellant claims that at sentencing the court cited to testimony of the victim "specifically stating the Appellant continued harassment and contact with her in the weeks leading up to the hearing (i.e. spying, following and communication through the children)." (Concise Statement #2a). Similar to his first claim of error already discussed, Appellant asserts in his concise statement that he should have been able to cross examine the witness in order to show "this to be demonstrably untrue." Appellant also claims that the court considered these factual assertions as true.

The court already discussed the reasons for its rulings related to the cross examination of the victim in addressing Appellant's first claim of error. In addition, Appellant does not provide a specific cite to the sentencing transcript where the court considered factual assertions related to "spying, following and communication through the children" in the weeks leading up to the hearing (which is court takes to mean the sentencing hearing). The court

explained on the record the reasons for its sentence. There is no indication that in imposing sentence upon Appellant the court considered any facts related to spying or communicating through the children that were untrue, as Appellant claims. As a result, this claim of error has no merit.

Second, Appellant claims that the victim was lying when she claimed during her victim impact statement that Appellant had been trying to contact her through the children, offering to do nice things for the children or her if she would allow Appellant back in her life. Counsel claims he was prepared to offer substantive cross examination to this point and testimony from other witnesses that demonstrated Claudia was lying to the court. As previously discussed, Appellant was not prevented from effectively cross-examining the victim. There is no indication that in imposing sentence upon Appellant the court considered any facts that were "not in evidence or simply incorrect" as Appellant claims in his concise statement. As a result, this claim of error has no merit.

Third, Appellant claims that Ms. Malloy repeatedly asserted that "she wanted nothing to do with the Appellant after the first incident, which was part of the basis of her statement that the Appellant had repeatedly harassed and tormented her." (See Concise Statement #2c). Appellant claims that counsel was prepared to cross examine Ms. Malloy on numerous examples of contact initiated by her since then. Appellant further claims that the court "did, in fact, consider the above statements as fact, and cited these facts as reasons supporting a lengthy state prison sentence." Appellant fails provide a cite to the record evidencing this averment. The court specifically stated that it did

not consider Ms. Malloy's victim impact statement as a factual document. (N.T. Sentencing 3/9/2020 at 106). There is no indication in the record that these facts formed any basis in determining the sentence imposed upon Appellant. This claim is without merit.

Fourth, Appellant claims that, in support of its ruling, the court stated that the letters from Appellant in question were sent in the days before court hearings, both at the magisterial district justice level and the court of common pleas level. Appellant claims that he was not convicted of any crimes related to a letter sent in close proximity to any common pleas court hearing.

The conduct for which Appellant was sentenced consists of two correspondence and an extended period of repeated phone calls. The two correspondence are: (1) on December 6, 2017, a text message from Appellant, sent from a phone number unknown to the victim, directing her to retrieve a letter in her mailbox authored and sent by Appellant; and (2) on January 10, 2018, an e-mail from Appellant purporting to be from an attorney named Ronald White, sent the night before the preliminary hearing. The repeated phone calls were on May 1 and May 2, 2018.[13]

For the correspondence on December 6, 2017, Appellant established a phone number through the Mathrawk application which allows a person to send a text message from a different phone number than their own. Appellant

---

[13] In imposing sentence, the court stated, "Mr. Malloy's actions correspond in each case to an event that was happening before this court and the magisterial district courts here in Montgomery County." (N.T. Sentencing 3/9/2020 at 105). However, there was no testimony that the repeated phone calls on May 1, 2018 and May 2, 2018, which formed the basis for the harassment charges, corresponded to proceedings in court. The testimony presented was that they were related to an incident involving Appellant's and Ms. Malloy's children. (N.T. 11/6/2019 at 188-190).

created the Mathrawk account on December 2, 2017, approximately ten (10) days after the date of the incident at the Allstar Bar and eight (8) days after Appellant was arrested on charges related to that incident. (11/5/19 at 155). Four days later, Appellant sent the text message to the victim using the Mathrawk application, directing her to check her mailbox, where she found a letter (set forth above in the factual and procedural history section). This letter was a specific response to the assault case related to the incident at the Allstar Bar that was filed approximately eight (8) days earlier. Only after he was arrested for assault did he decide to intimidate a witness in that case, the victim. The letter was deceitful, precise and methodical. It not only instilled fear in the victim by coercing and intimidating her to withhold information in order to avoid her own arrest, but also threatened her safety and privacy in advising her that surveillance cameras were surreptitiously placed within her home. Although this letter did not specifically precede any hearing in the court of common pleas, it was filed as a direct response to charges that were filed against Appellant in the court of common pleas.

For the correspondence on January 10, 2018, this e-mail was sent the night preceding the preliminary hearing in this matter and was specifically sent in an attempt to obstruct those proceedings.[14] The e-mail was deceitful in that it was created by Appellant, but appeared to be from an attorney attempting to

---

[14] In imposing sentence, the court stated, "He would brag about all the cops he knew, the judges, the lawyers, and it was in that context with that knowledge and those statements when the very first letter came in the mail on the eve of the preliminary hearing, she knew it was real, she knew she had something to fear." (N.T. Sentencing 3/9/2020 at 106). There appears to be some confusion in the sentencing record as to which correspondence coincides with which event. The very first letter that came in the mail was the letter that referenced surveillance cameras in the victim's home on December 6, 2017. The correspondence that was sent the night before the preliminary hearing was the "Ronald White e-mail" on January 10, 2018.

advise the victim that the best course of action for her is to withhold information from the judge. By sending this e-mail, Appellant attempted to instill fear in the victim about what the upcoming legal proceeding would entail, hoping that this might coerce her to drop the charges. These facts were supported by the evidence admitted at trial. The court exercised proper discretion in considering the context and timing of both the letter and the e-mail as one factor in support of the sentence imposed upon Appellant.

The fifth alleged factual error Appellant claims the court improperly relied upon in imposing a state sentence is the fact that Appellant was a police officer. Appellant claims that there was no evidence presented that Appellant used his capacity as a police officer in any way in this case and that no act took place while Appellant was serving in his role as a police officer.

Pennsylvania law requires the court to consider the particular circumstances of the offense and the character of the defendant in fashioning a sentence. **See 42 Pa.C.S.A. §9721(b).** In imposing sentence, as previously discussed, the court considered a great deal of information, including the Appellant's background and numerous pre-sentence evaluations. In sentencing a defendant, the court is obligated to consider the personal characteristics of a defendant. Due to his occupation as a police officer, Appellant had knowledge, experience, training and an understanding of how the judicial system operates. He knew or should have known that his conduct could wreak havoc on our system of justice. He employed this knowledge in carrying out the crimes he committed. The court exercised proper discretion in

considering Appellant's employment as a police officer as a factor to support the sentence imposed.

Lastly, Appellant contends that the court "cited to the Appellant had sending [sic] multiple letters to Claudia and the Court used this fact to support the imposition of consecutive, top of the standard range sentences." (Concise Statement #2f). Appellant claims that he was acquitted of all the charges related to every other email/letter, save one, and that the court erred in considering this evidence and relying on these to support the imposition of a significant state sentence. It is important to clarify that Appellant was found guilty of conduct related to one letter and one e-mail, each sent on different dates, and discussed at length earlier in this opinion. This claim is entirely without merit.

The next claim of error Appellant brings on appeal is that the court erred by sentencing Appellant in the top range of the sentencing guidelines, claiming that there was no reliable evidence to justify such a sentence. Appellant takes issue with the discretionary aspects of his sentence. It is well settled that in Pennsylvania the trial judge is given substantial deference in fashioning the appropriate sentence. *See Conte*, **198 A.3d at 1176.** As already discussed, the court considered a number of factors in fashioning its sentence. The court sentenced Appellant to an aggregate term of imprisonment of not less than twenty-four (24) months nor more than seventy-two (72) months. Appellant was RRRI eligible. The court was precise in fashioning its sentence. The court imposed three consecutive sentences. For the crime of intimidation of a

witness/victim – withholding information (December 6, 2017),[15] Appellant was sentenced to a term of imprisonment for not less than fourteen (14) months nor more than thirty-six (36) months. His RRRI minimum was identified at 10½ months. This sentence is in the standard range of the sentencing guidelines. For the two counts of criminal use of a communication facility (December 6, 2017 and January 10, 2018),[16] the court ran those two counts concurrent to each other, but consecutive to the sentence for intimidation of a witness/victim, and imposed a sentence of not less than nine (9) months nor more than twenty-four (24) months. His RRRI minimum was identified at 6¾ months. This sentence is in the standard range of the sentencing guidelines. For the crime of obstruction of administration of law or other government function (January 10, 2018) [17], Appellant was sentenced to a term of imprisonment for not less than one (1) month nor more than twelve (12) months to run consecutive to the sentence imposed for criminal use of a communication facility. His RRRI minimum was identified at ¾ months. Lastly, the court sentenced Appellant to one (1) year of probation on six misdemeanor harassment charges (3 charges for May 1, 2018 and 3 charges for May 2, 2018).

As discussed above, the court stated its reasons for the sentence on the record. Appellant was convicted of intimidating the victim in an attempt to

---

[15] 18 Pa.C.S.A. § 4952(a)(3) (F3).
[16] 18 Pa.C.S.A. § 7512(a) (F3).
[17] 18 Pa.C.S.A. § 5101 (M2).

scuttle the prosecution of a domestic violence assault of the victim and for obstructing justice in doing so. The court determined that this conduct:

> "completely undermined the integrity of the justice system that he was sworn to uphold. Engaging in conduct with the knowledge and intent that his conduct would obstruct, impede, impair, prevent, or interfere with the administration of justice. He intimidated or attempted to intimidate a victim of a crime, and he intimidated her to withhold testimony or information from law enforcement, a prosecuting official, or a judge. That is the core of our justice system, that witnesses can cooperate with law enforcement, that they can do so safely, that they can do so without fear or reprisal or fear of being harmed."
> (N.T. Sentencing 3/9/2020 at 104-105).

The court's sentence was within the guidelines for every count. The court based its sentence on the required factors to consider when imposing sentence, and the sentence was supported by the facts in this case. The court's sentence was not manifestly unreasonable. The court exercised proper discretion in imposing sentence upon Appellant, and Appellant's claim of error is without merit.

Appellant's fourth claim of error is that the trial judge erred in convicting Appellant for the charge of summary harassment,[18] for the incident at the Allstar Bar at docket number 1010-2018. Following trial, the court deferred its verdict on the summary harassment charge until the sentencing on the matter at docket number 2402-2019. At sentencing, the court found Appellant guilty of the harassment charge and ordered that he pay costs and no further penalty.

---

[18] 18 Pa.C.S.A. § 2709(a)(1).

The standard applied in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *E.g. Commonwealth v. Sipps*, 225 A.3d 1110, 1113 (Pa. Super. 2019), *appeal denied*, No. 44 MAL 2020, 2020 WL 3529427 (Pa. June 30, 2020).

A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same. *18 Pa.C.S.A. § 2709(a)(1)*. The evidence supported the verdict of guilt for this charge. During Appellant and the victim's argument in his parked vehicle, Appellant punched the victim in the mouth, specifically her lower left lip. (N.T. 11/4/19 at 47-48). The owner of the bar, Sean Scully, corroborated her testimony when he stated that he saw the victim inside the bar after the incident noticed a red mark on her lip. (N.T. 11/5/19 at 111). The next day, the victim went to the New Hanover Township Police Department and encountered Detective Coyle. She indicated to him that she wished to talk to an officer related to a domestic incident. Detective Coyle testified that when the victim came into the station, he noticed that her lip was swollen and pointed to his own lip asking her if that was the reason she wished to speak to someone. (N.T. 11/5/19 at 134-135). In addition, Detective Coyle identified Ms. Malloy's swollen lower left lip in a photograph. (N.T. 11/5/19 at 149-150, Exhibit C-37, C-38). The evidence was sufficient to prove that Appellant struck

or otherwise subjected Ms. Malloy to physical contact in order to sustain the charge of summary harassment. The court appropriately determined, beyond a reasonable doubt, that Appellant was guilty of this charge.

Appellant's fifth claim of error is that the court erred in not imposing sanctions for the complaining witness's theft of the attorney client notes belonging to the Appellant, as well as the Commonwealth's impermissible retention of said paperwork and failure to promptly notify the Appellant and his counsel of the Commonwealth's possession of said notes.

Appellant filed a motion for sanctions in this matter prior to the start of trial on October 30, 2019. The court denied the motion for sanctions following a hearing on October 31, 2019. The factual basis related to the motion for sanctions follows. During a custody exchange prior to the start of the trial while this case was pending, the victim obtained a notebook that belonged to Appellant. When she opened the notebook, she found that it had Appellant's handwritten notes related to the witness list in this case. (N.T. Pre-trial Motions 10/31/19 at 6; N.T. 11/4/19 at 66-67). Ms. Malloy took photographs of the notebook and its content. (N.T. 11/4/19 at 68). She contacted the assistant district attorney who was handling the case at the time, and the assistant district attorney told her not to turn over any of these materials to the commonwealth. The assistant district attorney contacted defense counsel to disclose this information, and defense counsel "accepted these representations and moved on." (N.T. Pre-trial Motions 10/31/19 at 5-6). Closer to the time of trial and upon review of the discovery, the assistant district attorney who was

at that time handling this case discovered the photographs of this notebook. She reached out to defense counsel and they agreed that that an intern from the district attorney's office would review the case file and sanitize the file of any kind of materials from that notebook and provide the material to defense counsel. (N.T. Pre-trial Motions 10/31/19 at 6-7). This way, the Commonwealth attorney would never see these materials. (N.T. Pre-trial Motions 10/31 at 6-7). Defense counsel received the materials from the district attorney's office, reviewed them, and determined, following a discussion with his client, that there was nothing in the materials to warrant the attention of the courts and the assistant district attorney's remedy of sanitizing the file was appropriate and acceptable to defense counsel. (N.T. Pre-trial Motions 10/31/19 at 7). However, in reviewing discovery in preparation for trial, defense counsel encountered a file labeled "witness list" and realized that this was photographs of his client's notebook.

In bringing this motion for sanctions, defense counsel did not allege any impermissible or unethical conduct of any of the assistant district attorneys involved in this case. (N.T. Pre-trial Motions 10/31/19 at 6,8). Rather, he alleged that this notebook was obtained impermissibly by the complaining witness and was subsequently not quarantined appropriately. Defense counsel conceded that dismissal of the case was not appropriate and suggested a jury instruction regarding the obtaining of this information as a remedy. (N.T. Pre-trial Motions 10/31/19 at 11).

Neither of the assistant district attorneys handling this case ever actually saw the challenged material. (N.T. Pre-trial Motions 10/31/19 at 13-14, 18-19). It was not used in any way in preparation for this case. (N.T. Pre-trial Motions 10/31/19 at 13-14). The Commonwealth acted at all times to protect the defendant's rights and to ensure that no prosecutor who might be involved in this case did not see this information. This information was in the possession of the Commonwealth presumably because an intern failed to recognize this as material to be quarantined. The Commonwealth did not engage in any misconduct or impermissible retention of the documents to warrant the imposition of sanctions. Nor, as Appellant claims, was there any failure by the Commonwealth to promptly notify Appellant and his counsel of the Commonwealth's possession of said notes. These notes were obtained by the complaining witness during a custody exchange. She was not acting as an arm of the commonwealth or an extension of law enforcement when she brought this information to the Commonwealth's attention. At trial, defense counsel had an opportunity to cross examine the witness related to this issue. The court instructed the jury on the credibility of witnesses and false in one, false in all. (N.T. 11/7/19 at 10-17). Those jury instructions relate to credibility of the witness and were sufficient to address this issue. The court exercised proper discretion in denying to impose sanctions on the Commonwealth.

Appellant's sixth claim of error is that after sentencing, Appellant learned of the existence of statements of the complaining witness made to

Conshohocken Borough Police Department as part of the labor investigation, which the Commonwealth failed to produce to the Appellant and his counsel. Here, Appellant does not raise any particular error of the trial court. Appellant provides no specificity as to what this evidence is, when the Commonwealth obtained it, and how the Commonwealth's alleged failure to produce it prejudiced him. Without more detail as to the content of this evidence, when the Commonwealth allegedly learned of these statements, and at what stage during the proceeding it allegedly failed to produce this evidence to defense counsel, the court is forced to speculate as to Appellant's claim of error and his remedy requested. With respect to materiality, "the mere *possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *See Commonwealth v. Santos*, 176 A.3d 877, 884 (Pa. Super. 2017).

Appellant's seventh claim of error on appeal is that the court failed to take proper account of the complaining witness's demonstrated complicity in the actions that were at the heart of the obstruction and harassment convictions. Once again, Appellant does not claim with any specificity what alleged error of the court made with respect to this issue. During this four-day trial, the jury heard testimony and evidence from a number of witnesses, including the complaining witness, Ms. Malloy. Defense counsel conducted an extensive and effective cross examination of Ms. Malloy and questioned her about her complicity and involvement in the actions that took place. The jury

carefully considered all of the evidence. This is evident by the questions they asked during their deliberations. The note read:

> "We have a question. You may or may not be able to answer this question. If you believe a defendant and the alleged victim worked together to write an e-mail, can the e-mail be obstruction of administration of law or other governmental function? This is if the law can explain obstruction of administration of law or governmental function."
> (N.T. 11/7/19 at 48).

Upon conference with counsel to discuss this note, the court stated:

> "So my inclination is to simply tell them that this is entirely up to them. I have given them the legal instructions and the definitions of the offenses, and whether the facts as they find them make out the law is up to them." (N.T. 11/7/19 at 48-49).

All counsel agreed with this approach. (N.T. 11/7/19 at 49). As a result, the trial court instructed the jury:

> "The answer to your question is, it's up to you. I have given you the law as it exists. There is not an additional instruction for me to give you. You determine what the facts are, and if the facts meet the elements of the offenses, then it's been proven beyond a reasonable doubt. It's your decision. So that is the best answer and only answer I can give you."
> (N.T. 11/7/19 at 50).

The jury carefully considered all of the evidence presented in this case and made a determination as to whether the facts met the elements of the offenses in this case. In doing so, the jury found Appellant not guilty of many of the charges against him. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *E.g. Commonwealth v. Miller*, 172 A.3d 632, 642 (2017). It is well-settled that the court cannot substitute its judgment for that of the trier of fact. *Id.* Appellant's claim that the court "failed to take proper account of the complaining witness's complicity" has no basis.

Appellant's last four claims of trial court error relate to the sufficiency of the evidence for each of the crimes for which Appellant was found guilty. The standard for sufficiency of the evidence is well settled:

> "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."

***Commonwealth v. Sipps***, 225 A.3d 1110, 1113 (Pa. Super. 2019), *appeal denied*, No. 44 MAL 2020, 2020 WL 3529427 (Pa. June 30, 2020)

First, Appellant claims that the evidence was insufficient to sustain the charge of intimidation of a witness. Appellant was guilty of one count of intimidation of a witness – withhold information[19] for conduct that occurred on December 6, 2017. For that crime, the following two elements must be proven beyond a reasonable doubt: (1) the defendant intimidated or attempted to intimidate a witness or victim into withholding testimony, information, or a document relating to the commission of a crime from a law enforcement officer, prosecuting official, or judge; and (2) that the defendant did so with the intent

---

[19] 18 Pa.C.S.A. § 4952(a)(3).

to, or with the knowledge that his conduct would, obstruct, impede, impair, prevent or interfere with the administration of criminal justice. ***See 18 Pa.C.S.A. § 4952 (a)(3).***

The crime of intimidation of a witness – withhold information focuses on the *mens rea* of the defendant. Actual intimidation of a witness is not an essential element of the crime. ***Com. v. Beasley***, 138 A.3d 39, 48 (Pa. Super. 2016). The crime is committed if one, with the necessary *mens rea*, attempts to intimidate a witness or victim. ***Id.*** The trier of the fact, therefore, could find that a defendant attempted to intimidate his accuser and that he did so intending, or at least having knowledge, that his conduct was likely to impede, impair or interfere with the administration of criminal justice. ***See Id.*** The Commonwealth is not required to prove *mens rea* by direct evidence, and may rely on circumstantial evidence. ***Id.***

In this case, on December 6, 2017, the victim received a letter from Appellant. The content of the letter, as set forth earlier in this opinion, was intimidating on its face. It specifically stated to the victim to beware of the alleged surveillance cameras in the house. It instilled a fear in her that if she were to continue to bring forth these charges, she could be arrested. Appellant directed her to withhold information if contacted: "If called DO NOT TALK TO ANYONE, USE YOUR RIGHT TO REMIAN SILENT AND DO NOT GIVE ANY STATEMENTS OR SUBMIT TO AN INTERVIEW regarding the videos. DO NOT COMMENT OR DENY, JUST REMAIN SILENT. And make sure those cameras get taken down." (N.T. 11/4/19 at 84, Exhibit C-7).

Appellant testified during trial that he and the victim discussed the circumstances surrounding this letter, and that she asked him to compose this letter because she was still having contact from the police and she was scared and didn't know what to do. (N.T. 11/6/19 at 124). However, the victim's testimony belied that assertion. She stated that when she received this initial text message directing her to check her mailbox, she was very scared and immediately tried to determine who it was from and who had been at her home. (N.T. 11/4/19 at 82-85). The victim testified she was extremely scared by this letter because Appellant had gone to wiretap school and he knew how to wire a house with cameras and knew exactly where to place the cameras in order to obtain the best viewpoint. (N.T. 11/4/19 at 85).

This letter was an attempt by Appellant to instill fear in the victim and intimidate her into believing that if she were to testify these cameras would result in exposing embarrassing and/or inculpatory footage about her. He lied to her and told her that he had prior incidents on camera. (N.T. 11/6/19 at 123). Appellant's actions were calculated, precise, methodical and deceitful. It was only after he was arrested on assault charges that he orchestrated this scheme to instill fear in the complaining witness, his wife, and intimidate her into dropping these charges. Our system of justice is dependent on witnesses and victims feeling confident and safe in coming into trial and testifying knowing they are going to be secure or that there will be repercussions if someone chooses to try to intimidate them. Appellant's actions were intended to dissuade her from participating in the prosecution against him. His actions

were precise and deliberate, and he knew or should have known that they would wreak havoc on our system of justice.

The jury was properly instructed with respect to this charge. (N.T. 11/7/19 at 27-28). The evidence showed a pattern of behavior by Appellant to attempt to scuttle the prosecution of a domestic violence allegation. The totality of this evidence was sufficient for the jury to infer that Appellant sent this text message and letter on December 6, 2017 in an attempt to intimidate Ms. Malloy into withholding information from a law enforcement officer, prosecuting official, or judge and that he did so with the knowledge or intent that his conduct would obstruct, impede, impair, prevent or interfere with the administration of criminal justice.

Next, Appellant claims that the evidence was insufficient to sustain the charge of obstructing administration of law or other government function. Appellant was guilty of one count of obstructing administration of law or other government function[20] for conduct that occurred on January 10, 2018. For this crime, the following three elements must be proven beyond a reasonable doubt: (1) that the defendant obstructed, impaired, or perverted the administration of law or other government function; (2) that the defendant did so by unlawful force, violence, or physical interference or obstacle, breach of official duty, or an act otherwise in violation of the law; and (3) that the defendant did so intentionally, that is, he acted or failed to act with the conscious object of causing such an obstruction, impairment, or perversion.

---

[20] 18 Pa.C.S.A. § 5101.

**18 Pa.C.S.A. § 5101.** For the first element, whether an actual obstruction, impairment, or perversion occurred is not required, because the intentional, although unsuccessful, attempt to bring about that result if also covered by this offense. **Commonwealth v. Snyder**, 60 A.3d 165, 175-177 (Pa. Super. 2013). Appellant claims that the Commonwealth did not produce sufficient evidence to sustain this charge because the evidence demonstrated that Ms. Malloy was a "willing participant in the creation of said communications, as well as soliciting said communications."

The jury was properly charged with respect to this offense. (N.T. 11/7/19 at 30-31). The jury considered whether the victim was a willing participant in the crime to the extent that they asked a question during their deliberations as to whether they could find Appellant guilty of this crime if they believed Ms. Malloy participated in any way. (N.T. 11/7/19 at 48-51). The alleged participation of the victim has no bearing on whether there is evidence that a defendant's actions constituted conduct to properly meet the elements of this crime, nor is it a defense to this crime. The jury properly determined that for the conduct that occurred on January 10, 2018, the evidence was sufficient to meet each of the elements of this crime, regardless of whether the victim was a participant. Appellant created a false e-mail account purporting to be from an attorney advising the victim about how to proceed at the preliminary hearing the next morning in order to have the charges against Appellant dropped. This e-mail on its face is sufficient to establish the elements of the

crime of obstructing administration of law as set forth above. This claim of error has no merit.

Third, Appellant claims that the evidence was not sufficient to sustain the charges of criminal use of a communication facility because the evidence demonstrated that the victim was a "willing participant in the creation of said communications as well as soliciting said communications." Appellant was guilty of two counts of criminal use of a communication facility[21] for conduct that occurred on December 6, 2017 and January 10, 2018. For this crime, the following three elements must be proven beyond a reasonable doubt: (1) that the defendant intentionally, knowingly, or recklessly used a communication facility; (2) that the defendant intentionally, knowingly, or recklessly used the communication facility to facilitate or bring about the commission of the crime or intimidation or a witness or victim, obstruct administration of law, harassment and/or stalking; and (3) that the crimes did in fact occur. *18 Pa.C.S.A. 7512 (a).*

The jury was properly instructed on this charge. (N.T. 11/7/19 at 28-29). Appellant's claim that the victim was a willing participant in these communications is an issue of credibility that was resolved by the jury. This has no bearing on whether the evidence related to Appellant's conduct was sufficient to prove the required elements of this charge. In reviewing the totality of the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to meet the elements of this crime. It was

---

[21] 18 Pa.C.S.A. § 7512(a).

uncontroverted that Appellant utilized a communication facility to create a false phone number in order to intentionally, knowingly or recklessly bring about the commission of the crime of intimidation of a witness/victim, which crime did in fact occur. In addition, it was uncontroverted that Appellant used a communication facility to create a false e-mail account in order to intentionally, knowingly or recklessly bring about the commission of the crime of obstructing administration of law, which crime did in fact occur.

Finally, Appellant's last claim of error is that the evidence was insufficient to sustain the charges of harassment as the evidence demonstrated that the victim was a "willing participant in the communications and said communications represented the normal back and forth between Appellant and Complaining witness." (Concise Statement #11). Appellant was guilty of six counts of harassment[22] for conduct that occurred on May 1, 2018 and May 2, 2018. This conduct consisted of hundreds of repeated phone calls and text messages to the victim over the course of these two days. The victim went to the police station due to this conduct because she was unable to get it to stop. (N.T. 11/4/19 at 98-100; N.T. 11/5/19 at 125-128). Appellant admitted to this conduct. (N.T. 11/6/19 at 156-158, 188-197). The evidence was sufficient to sustain these charges of harassment and this claim of error has no merit.

---

[22] 2 counts of 18 Pa.C.S.A. § 2709(a)(5) – communicate repeatedly in an anonymous manner; 2 counts of 18 Pa.C.S.A. § 2709(a)(6) – communicate repeatedly at extremely inconvenient hours; and 2 counts of 18 Pa.C.S.A. § 2709(a)(7) – communicate repeatedly.